UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

-against-

JOSEPH AGATE, et al.,

Defendants.
-----------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 14 2009 ★
BROOKLYN OFFICE

MEMORANDUM
& ORDER ON
RESTITUTION

08-CR-76 (JBW)

JACK B. WEINSTEIN, Senior United States District Judge:

**Table of Contents**

I. Introduction ........................................................................................................................2
II. Facts ....................................................................................................................................2
III. Law .....................................................................................................................................4
  A. History of Restitution in Criminal Cases ......................................................................4
  B. Criminal Restitution before 1996 .................................................................................5
  C. Mandatory Restitution under the MVRA of 1996 ........................................................6
    1. Background and Legislative History ........................................................................6
    2. Definition of "Victim" ..............................................................................................6
    3. Procedures for Ordering Restitution .........................................................................8
      a. Role of Probation .................................................................................................8
      b. Role of Defendants ..............................................................................................8
      c. Role of Prosecutor ...............................................................................................9
      d. Role of Victim .....................................................................................................9
      e. Role of Court .......................................................................................................9
    4. Statutory Time Limit ...............................................................................................11
IV. Application of Law to Facts .............................................................................................12
  A. Waiver of Statutory Time Limit ..................................................................................12
  B. Government Failure to Request Restitution at Sentencing .........................................13
  C. Restitution to Union Victims ......................................................................................13
    1. Local 282 .................................................................................................................13



    2. Local 325 ..................................................................................................................14
  D. Restitution to Joseph Vollaro ...................................................................................14
    1. "Victim" Under the MVRA...................................................................................14
    2. No Criminal Act in pari materia ..........................................................................14
    3. Restitution Under the MVRA as a Form of Punishment......................................15
    4. Settlement and Assignment of Restitution to Crime Victims Fund.....................16
    5. Sums Ordered Paid ..............................................................................................17
**V. Conclusion**................................................................................................................17

## I. Introduction

Out of sixty-two defendants in this criminal case against members and associates of the Gambino crime family, one signed a deferred prosecution agreement and one was found guilty by a jury. The remaining sixty defendants entered guilty pleas and were sentenced. Most restitution amounts and allocations were decided by a global settlement approved by the court. Two defendants were ordered to pay restitution to a union victim not included in the settlement.

Serious doubts were entertained by the court about the applicable law and the court's power to accept this settlement of restitution obligations. On the instant facts this is a matter of first impression in this circuit. *Compare In re W.R. Huff Asset Management Co.*, 409 F.3d 555, 563-64 (2d Cir. 2005) (statutory exception permits settlement) *with United States v. Boal*, 534 F.3d 965, 967 (8th Cir. 2008) (settlement not permitted) *and United States v. Bearden*, 274 F.3d 1031,1040-41 (6th Cir. 2001) (same). Justification for the settlement procedure utilized in the present case is set out below.

## II. Facts

A number of the crimes concerned carry restitution obligations under the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A. Because of the complexity of the issues posed, the court elected to hold a consolidated restitution hearing for all involved defendants rather than imposing restitution obligations at each individual sentencing. *See*

*generally* Order, Aug. 6, 2008, Docket Entry ("D.E.") No. 1030; Order, Aug. 8, 2008, D.E. No. 1057; Gov't Ltr., Sept. 10, 2008, D.E. No. 1252; Order, Sept. 25, 2008, D.E. No. 1305; Hr'g Tr., Oct. 6, 2008. On October 6, 2008, the court directed the parties to brief the restitution issues.

Particularly troubling was the question of whether one Joseph Vollaro – who was both a cooperating witness and an associate of the Gambino crime family – should be granted restitution. He had profited from the activities that were part of some crimes charged and from his criminal connections. *See* Hr'g Tr. 18, Oct. 6, 2008.

Resolution of the restitution question was adjourned to a hearing on February 26, 2009. The government's memorandum argued that: (1) defendants convicted of a RICO conspiracy should be subject to restitution liability for each predicate act falling under the MVRA for which there was evidence of the defendant's participation, whether or not the acts were admitted on the plea of guilty; (2) Vollaro was entitled to restitution; and (3) listed defendants should be ordered to pay full restitution in specified amounts. *See* Gov't Mem., Feb. 20, 2009, D.E. No. 1874. Vollaro informed the government that he waived his right to receive any restitution, instead assigning his interest to the Crime Victims Fund. *See id.* at 5 n.2; *see also* 18 U.S.C. § 3664(g)(2) ("A victim may at any time assign the victim's interest in restitution payments to the Crime Victims Fund in the Treasury without in any way impairing the obligation of the defendant to make such payments.").

Defense counsel sought by subpoena to compel Vollaro's appearance at the restitution hearing. *See* Gov't Mot. Quash, Nov. 21, 2008, D.E. No. 1517. The government's motion to quash was granted based upon the provision that "[n]o victim shall be required to participate in any phase of a restitution order," 18 U.S.C. § 3364(g)(1), and on a finding of fact that Vollaro's appearance might expose him to danger.

3

The victims on whose behalf the government ultimately sought restitution were the Trustees and Fiduciaries of Local 282 International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation and Sick Leave Trust Funds ("Local 282") and Vollaro. At the February 26, 2009 hearing, the government called as a witness Jonathan Mellone, an agent with the Department of Labor Inspector General's Office who had worked with Vollaro during the course of his cooperation. *See* Hr'g Tr. 31-38, Feb. 26, 2009. Defense counsel objected on *Crawford* grounds to the government's attempt to have Agent Mellone testify as to testimonial statements of Vollaro. *See id.* at 38; *see also Crawford v. Washington*, 541 U.S. 36 (2004). They argued that if the government intended to rely upon the conversations taped by Vollaro during the course of his cooperation, the tapes themselves should be admitted as evidence rather than having Agent Mellone's testimony introduced, based on his having previously listened to the tapes and summarizing key portions. *See id.* at 39-45. Accepting the defense proposal for full and extended hearings would have required approximately six weeks of evidentiary hearings. *See id.* at 50.

The court suggested that the government and the many individual defendants meet and attempt to reach a reasonable global settlement. *See id.* at 46-47. Ultimately the parties agreed on a compromise as to amount and allocation among individual defendants. The court approved it. *See* Restitution Order, Apr. 22, 2009, D.E. No. 2005; Restitution Order, May 7, 2009, D.E. No. 2039.

**III. Law**

A. History of Restitution in Criminal Cases

Common law supported restitution. *See* William Blackstone, 4 *Commentaries* *356. As Blackstone put it:

4

> "[I]f any person be convicted of larciny by the evidence of the party robbed, he shall have full restitution of his money, goods, and chattels; or the value of them out of the offender's goods, if [he] has any, by a writ to be granted by the justice. And this writ of restitution shall reach the goods so stolen, notwithstanding the property of them is endeavoured to be altered by sale in market overt."

*Id.* Restitution was traditionally considered an equitable remedy. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) ("'equitable relief' can also refer to those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)") (emphasis and parentheses in original).

In 1925, Congress granted federal courts discretion to suspend the sentence of a defendant, place the defendant on probation, and order payment of restitution as a condition of probation. *See* Law of Mar. 4, 1925, ch. 521, 43 Stat. 1259, codified at 18 U.S.C. § 3651 (1925) (repealed 1984). Prior to this statutory scheme, "the United States district courts suspended sentence in many instances," some courts using a form of probation – though without legislative authority – "placing defendant under the supervision of state probation officers or volunteers . . . [who] greatly increased sums collected for fines, *restitution*, and especially family support." H.R. Rep. No. 68-1377, at 3 (1925) (emphasis added).

B. Criminal Restitution before 1996

In 1982, Congress passed the Victim and Witness Protection Act ("VWPA"), authorizing district courts to order restitution as a matter of discretion in any criminal case arising out of title eighteen of the United States Code and in air piracy cases. *See* P.L. 97-291, 96 Stat. 1259, codified at 18 U.S.C. § 3663. Increasing the scope of this criminal remedy for victims, Congress passed the Violent Crime Control and Law Enforcement Act of 1994. It made restitution mandatory for sexual abuse crimes. *See* P.L. 103-322, 108 Stat. 1904, 1906, 1928, codified at 18

U.S.C. §§ 2248, 2259, and 2264 respectively. Restitution was not mandatory for any other criminal offenses.

C. Mandatory Restitution under the MVRA of 1996

*1. Background and Legislative History*

In enacting the MVRA in 1996, 18 U.S.C. § 3663A, Congress expanded mandatory restitution to cover a large group of offenses. *See United States v. Amato*, 540 F.3d 153, 159 (2d Cir. 2008) (discussing context of Mandatory Victims Restitution Act). The MVRA now applies to convictions for crimes of violence, 18 U.S.C. § 3663A(c)(1)(A)(i), and to "offense[s] against property under [title eighteen] . . . including any offense committed by fraud or deceit," 18 U.S.C. § 3663A(c)(1)(A)(ii), so long as "an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B). When sentencing a defendant for such an offense, "the court *shall order*, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate." 18 U.S.C. § 3663A(a)(1) (emphasis added). Restitution is required without regard to the defendant's economic circumstances, though terms of payment may take into account the financial needs of the defendant and his or her family. 18 U.S.C. § 3664(f)(1)(A).

*2. Definition of "Victim"*

The MVRA defines a "victim" as

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy or pattern.

18 U.S.C. § 3663A(a)(2).

Faced with this mandatory statute, in order to avoid absurd results, courts have recognized that some individuals that would benefit from a mechanical application of the MVRA should not be considered "victims." The Court of Appeals for the Second Circuit has ruled that co-conspirators in the offense of conviction are not "victims" entitled to restitution under the MVRA. *United States v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006). Clarifying this interpretation in *United States v. Ojeikere*, the court held that "restitution under the MVRA may not be denied simply because the victim had greedy or dishonest motives, where those intentions were not *in pari materia* with those of the defendant." 545 F.3d 220, 223 (2d Cir. 2008). In *Ojeikere*, the victims participated in what they thought was a fraudulent scheme to obtain money from Nigeria, but was in fact a plan to obtain money from them. *Id.* at 222-23. The restitution order as to these victims was affirmed because the defendant failed to show that "victims lost ill-gotten gains, or that they were *in pari materia* with the scheme of which he was convicted." *Id.* at 223.

A number of courts have examined the question of whether an individual who loses ill-gotten gains may be awarded restitution as a "victim" under the MVRA. Drawing a fine distinction with respect to double-crossing, the Court of Appeals for the Second Circuit ruled "a would-be burglar who is robbed by a potential accomplice before either of them commits the planned crime may be entitled to restitution;" by contrast, "restitution would not be appropriate if one burglar were to rob another of the proceeds of a heist they have just committed." *Id.* at 223. The Court of Appeals for the Eighth Circuit has concluded that "the relevant analogy is whether [the party seeking restitution] would have a civil cause of action against [defendant] for his conduct in committing the . . . offense of conviction." *United States v. Chalupnik*, 514 F.3d 748, 753 (8th Cir. 2008).

Concerned about restoring ill-gotten gains to criminals, courts denied restitution to parties whose illegally obtained money was subsequently stolen from them:

> Courts must be concerned about the propriety of using the court's considerable power to assist someone in recovering a loss. As a matter of principle, courts traditionally have followed a policy of closing the courthouse doors to persons seeking, through civil lawsuits, to collect debts that arise from unlawful activities. That principle should apply, likewise, when a court decides whether, by ordering restitution as part of a sentence in a criminal case, to help someone . . . whose legally earned money is stolen while declining to help another . . . whose stolen money had been obtained illegally.

*United States v. Martinez*, 978 F.Supp. 1442, 1454 (D.N.M. 1997) (denying restitution to illegally operated casino when defendant stole from the casino).

### 3. *Procedures for Ordering Restitution*

#### a. *Role of Probation*

A probation officer, upon order of the court, has initial responsibility for providing a report containing information sufficient for the court to fashion a restitution order, including an accounting of losses to each victim, any restitution owed pursuant to a plea agreement, and the economic circumstances of a defendant. *See* 18 U.S.C. § 3664(a). The officer is also responsible for providing notice to victims of the date, time and place of the restitution hearing, and of their opportunity to submit information to the probation officer concerning the amount of their losses. *See* 18 U.S.C. § 3664(d)(2).

#### b. *Role of Defendants*

Each defendant is required to "prepare and file with the probation officer an affidavit fully describing [his or her] financial resources," including a listing of assets, and "the financial needs and earning ability of the defendant and the defendant's dependents." 18 U.S.C. § 3664(d)(3). At the restitution hearing, the defendant bears "[t]he burden of demonstrating the

financial resources of the defendant and the financial needs of the defendant's dependents." 18 U.S.C. § 3664(e). Because restitution is mandatory, this information is used for structuring payments, not for determining the amount of restitution to be ordered. "A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." 18 U.S.C. § 3664(k).

### c. Role of Prosecutor

If the probation officer so requests, the government attorney shall provide the probation officer with a listing of all amounts subject to restitution after consulting with all identified victims to the extent possible. 18 U.S.C. § 3664(d)(1). "The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e).

### d. Role of Victim

Victims are informed of the opportunity to submit to the probation officer information and affidavits related to the amount of the victim's losses. 18 U.S.C. § 3664(d)(2). Section 3364(g)(1) provides that "[n]o victim shall be required to participate in any phase of a restitution order." 18 U.S.C. § 3364(g)(1). The statute permits a victim to "at any time assign [his or her] interest in restitution payments to the Crime Victims Fund in the Treasury without in any way impairing the obligation of the defendant to make such payments." 18 U.S.C. § 3664(g)(2).

### e. Role of Court

District courts fashioning restitution orders may hold evidentiary hearings at sentencing when the government proves the amount of loss sustained by victims. *See, e.g., Reifler*, 446 F.3d

at 122. "Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." 18 U.S.C. § 3664(e).

An order of restitution under the MVRA does not require a finding by a jury of loss. *See Reifler*, 446 F.3d at 113-120 (rejecting *Booker* challenges to district court MVRA restitution orders based on findings of district judges by a preponderance of the evidence). "[T]here is no constitutional requirement that the facts needed for the district court's fashioning of a restitution order be found by a jury or found beyond a reasonable doubt." *Id.* at 116. Findings of the amount of loss may be based upon reasonable estimates. *Cf. United States v. Uddin*, 551 F.3d 176, 180 (2d Cir. 2009) (explaining that estimate of loss need only be reasonable given the available information).

The court need not order restitution where it is otherwise required by the MVRA upon a finding that "the number of identifiable victims is so large as to make restitution impracticable," 18 U.S.C. § 3663A(c)(3)(A), or that "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B).

Payment of restitution may be ordered immediately in full or as set forth in a payment schedule. *See United States v. Nucci*, 364 F.3d 419, 422 (2d Cir. 2004). The court must consider the defendant's financial circumstances and those of his or her family when deciding whether payment of any restitution should be by lump-sum or pursuant to a payment schedule, or whether and how interest should be added. *See United States v. Gurung*, 58 F. App'x 871, 873-74 (2d Cir. 2003).

Where a defendant is convicted of conspiracy, "the statutes allow the sentencing court to order a single defendant to pay restitution for all losses caused by the actions of that defendant as well as by the actions of that defendant's co-conspirators." *United States v. Boyd*, 222 F.3d 47, 50 (2d Cir. 2000). *See also Reifler*, 446 F.3d at 135 ("the district court cannot properly order restitution under the MVRA unless the victim's harm resulted from the offense of conviction, including, with respect to a conspiracy offense, the defendant's conduct in the course of the conspiracy"). Imposition of restitution liability for acts of co-conspirators is not mandatory. In a multiple-defendant case, the court has discretion to "make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant," 18 U.S.C. § 3664(h); joint and several liability is usually imposed in this court.

Restitution should be for the full amount of the victim's loss; a court may not impose a restitution award in excess of the amount of the victim's loss. *United States v. Brennan*, 526 F. Supp. 2d 378, 389 (E.D.N.Y. 2007) (citing *United States v. Boccagna*, 450 F.3d 107, 117 (2d Cir. 2006)).

### 4. *Statutory Time Limit*

Section 3664 requires the court to set a date for the final determination of the victim's losses no more than 90 days after sentencing. 18 U.S.C. § 3664(d)(5). Section 3664(d)(5) directs: "If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set *a date for the final determination* of the victim's losses, *not to exceed 90 days after sentencing.*" 18 U.S.C. § 3664(d)(5) (emphasis added). The Court of Appeals for the

Second Circuit construes "final determination of the victim's losses" to mean entry of an order of restitution. *United States v. Stevens*, 211 F.3d 1, 4 (2d Cir. 2000).

A defendant may not challenge a failure to order timely restitution unless the delay was objected to and prejudicial. He or she "surely [is] not prejudiced by a delay he consented to with the advice of experienced counsel." *United States v. Catoggio*, 326 F.3d 323, 329-30 (2d Cir. 2003); *see also Stevens*, 211 F.3d at 4-5 (where delay is primarily caused by defendant concealing assets, 90-day limit may be tolled; remand is unnecessary unless defendant can show the delay was prejudicial). "[A] presumption of harmlessness applies to any error in the timely identification of victims' losses," regardless of whether the defendant bears responsibility for the delay. *United States v. Zakhary*, 357 F.3d 186, 188 (2d Cir. 2004). The purpose of the 90-day rule "is not to protect defendants from drawn-out sentencing proceedings or to establish finality; rather, it is to protect crime victims from the willful dissipation of defendants' assets." *Id* at 191.

## IV. Application of Law to Facts

### A. Waiver of Statutory Time Limit

On July 8, 2008, the first defendant, Louis Filippelli, was sentenced. Ninety days from sentencing was October 6, 2008. On October 6, 2008, the court held a restitution hearing for all defendants. The parties were not prepared to present evidence. *See* Hr'g Tr. 14-15, Oct. 6, 2008. The government and all defense counsel present at that hearing agreed to waive the statutory 90-day time limit. *Id.* at 16. An evidentiary hearing was ultimately adjourned to February 26, 2009.

There was no prejudice to defendants by the delayed entry of an order of restitution in this case. The delay was a product of complexities due to a large multiple-defendant, multiple-crime case in which the restitution liability of numerous defendants involved difficult overlapping factual and legal issues.

12

### B. Government Failure to Request Restitution at Sentencing

A few defendants were not ordered to pay restitution because they were not put on notice at the time of sentencing that any restitution would be sought. In the interests of fairness and finality of sentences, the court found that restitution could not then be sought, well past the 90-day time limit, where the government had represented that there was no restitution issue at the time sentence was imposed. *See* Hr'g Tr. 7-14, Feb. 26, 2009.

### C. Restitution to Union Victims

#### *1. Local 282*

The defendants who caused losses to Local 282 are Sarah Dauria and Joseph Spinnato; both pled guilty to conspiracy to commit mail fraud. *See* 18 U.S.C. §§ 1341, 1349. Each is a working person with a modest income.

Defendant Sarah Dauria was ordered at sentencing to pay $2,643,530.58 without interest in restitution to Local 282. This was the amount claimed and substantiated by the union, which had its attorney present at her sentencing. *See United States v. Dauria*, No. 08-76, 2008 WL 5459197, at *1 (E.D.N.Y. 2008). Dauria's restitution was ordered paid at a rate of $25 per month, with the first payment due three months from the date of sentencing. *Id.* The monthly payments were ordered to double each time Dauria's net income doubles. *Id.*

At a separate hearing held after the date of his sentencing, the court ordered Spinnato to pay $2,643,530.58 to Local 282 at the same rate of $25 per month with the same conditions as Dauria.

The restitution liability of Dauria and Spinnato to Local 282 is joint and several. The court recommended that the union pursue a modest lump-sum settlement with both Dauria and

13

Spinnato. If it is agreed upon, and the government has no objection, the court will amend its restitution order to approve such a settlement.

### 2. *Local 325*

By letter to the government dated February 25, 2009, Laborers' Local 325 ("Local 325") indicated its inability to credibly quantify the loss resulting from the convictions at issue. *See* Order, Feb. 25, 2009, D.E. No. 1899. Because of the lack of a provable loss, no restitution was ordered to the union. *See* S. Rep. 104-179, 1996 U.S.C.C.A.N. 924, 932, 1995 WL 731704 ("losses in which the amount of the victim's losses are speculative, or in which the victim's loss is not clearly causally linked to the offense, should not be subject to mandatory restitution").

### D. Restitution to Joseph Vollaro

#### 1. *"Victim" Under the MVRA*

Joseph Vollaro is a "victim" in the meaning of the MVRA; he was "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered" under the Act. *See* 18 U.S.C. § 3663A(a)(2). His losses consist of extortion payments made to defendants. The money for these payments was not furnished to him by the government. The question of whether Vollaro could be awarded restitution in this case was in part dependent upon whether he should be considered a co-conspirator in the offenses of conviction, and on the source of the money that constituted his claimed losses.

#### 2. *No Criminal Act* in pari materia

Vollaro could not be considered a co-conspirator for the purpose of the defendants' convictions because of his status as a government cooperator. An "agreement to conspire requires that at least two culpable co-conspirators agree, and a 'person who enters into such an agreement while acting as an agent of the government, either directly or as a confidential

informant, lacks the criminal intent necessary to render him a *bona fide* co-conspirator.'" *United States v. Carlton*, 442 F.3d 802, 811 (2d Cir. 2006) (quoting *United States v. Vazquez*, 113 F.3d 383, 387 (2d Cir. 1997)). He cannot be said to have been "of the same mind" as the defendants, even though he profited from his criminal connections to them, because of his unique status as a government cooperator who at times played the role of a co-conspirator and at times of a victim.

### 3. Restitution Under the MVRA as a Form of Punishment

The fact that an order of restitution under the MVRA does not require a finding by a jury of loss strongly suggests that even mandatory restitution is nourished by the equitable roots of the concept of common-law restitution – namely, reimbursement for loss. "Restitution is designed to make victims whole, not to punish perpetrators; it is essentially a civil remedy created by Congress and incorporated into criminal proceedings for reasons of economy and practicality." *United States v. Carruth*, 418 F.3d 900, 904 (8th Cir. 2005) (citing *United States v. Arutunoff*, 1 F.3d 1112, 1121 (10th Cir. 1993).

Despite its equitable victim-rights origins, Supreme Court cases support a rationale of punishment as part of the justification for criminal restitution. *See, e.g., Pasquantino v. United States*, 544 U.S. 349, 365 (2005) (describing purpose of awarding restitution under MVRA in the case as "to mete out appropriate criminal punishment for that conduct"); *Kelly v. Robinson*, 479 U.S. 36, 52-53 (1986) (holding that restitution obligations imposed as conditions of probation in state criminal proceedings are not dischargeable in Chapter 7 bankruptcy because they are primarily penal rather than compensatory). *See also United States v. Sheinbaum*, 136 F.3d 443, 447 (5th Cir. 1998) ("There are strong arguments to be made that the goal of the VWPA is compensatory. . . . Indeed, the very title of the VWPA – "The Victim and Witness Protection Act" – might lead one to believe that the point behind the VWPA is compensation, not

retribution or the like. Nevertheless, the overwhelming trend in the caselaw is to read the VWPA as a penal provision.").

Restitution can act as a rehabilitative and punitive tool distinct from fines and other forms of punishment:

> Restitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine.

*Kelly*, 479 U.S. at 49 n.10. In this case, without regard to Vollaro's status, all the defendants who caused quantifiable losses should pay. Restitution forms one of the strands of punishment and rehabilitation Congress has prescribed.

### 4. Settlement and Assignment of Restitution to Crime Victims Fund

The government indicated in its submission of February 20, 2009 that Vollaro waived his right to receive any restitution awarded and assigned it to the Crime Victims Fund under section 3664(g)(2).

Although he suffered some losses due to the acts of the defendants, Vollaro in fact gained benefits far greater than any of his losses from his role as a government cooperator. The court would stand on swampy ethical, statutory and historical grounds in awarding restitution to such a restitutee. His waiver of any right to receive the restitution ordered and his assignment of restitution to the Crime Victims Fund relieves the court from the necessity of deciding whether a cooperator who benefits significantly from his cooperation – by economic gains and those from non-prosecution of his own crime – should also be awarded restitution under the MVRA.

Vollaro received substantial personal income from the illegally conducted businesses he and the government used to incriminate the defendants.

An appropriate resolution was achieved. Vollaro will not receive any of the restitution ordered in his favor, but the defendants will still be required to pay for losses they caused. This result carries out the statutory design that restitution be awarded in all criminal cases where there are identifiable victims with quantifiable losses. It avoids thorny issues that would have been raised were Vollaro to have pocketed restitution funds. This outcome promotes fairness by ordering defendants in this unusually large criminal case who have discernable restitution obligations to pay regardless of the identity of their particular victims. The *cy pres* doctrine, itself equitable in nature, fits well with the MVRA in the instant case.

### 5. *Sums Ordered Paid*

Defendant William Kilgannon's restitution obligation of $4,500 was resolved by stipulation with the government prior to his sentencing.

Sarah Dauria and Joseph Spinatto were ordered to pay $2,643,530.58 in restitution to Local 282 in small monthly amounts, with joint and several liability.

The twenty defendants listed in the Restitution Orders dated April 22, 2009 and May 7, 2009, *see* D.E. No. 2005 (listing each defendant's restitution obligation in chart form); D.E. No. 2039 (modifying certain defendants' obligations), agreed with the government to pay set amounts of restitution to the Crime Victims Fund that would otherwise have been paid to Joseph Vollaro. The court approved the settlement.

## V.  Conclusion

All restitution required in this case has now been ordered.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: May 14, 2009
       Brooklyn, New York